**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Locy Mendoza Smith, II, | No. CV-17-04096-PHX-DWL |
| Petitioner, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

On November 6, 2017, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) On June 4, 2019, Magistrate Judge Burns issued a Report and Recommendation ("R&R") concluding the petition should be denied and dismissed with prejudice. (Doc. 23.) Afterward, Petitioner filed written objections to the R&R (Doc. 24), Respondents filed a response (Doc. 26), and Petitioner filed a reply (Doc. 27). For the following reasons, the Court will overrule Petitioner's objections and deny and dismiss his petition.

I.    State Court Proceedings

On June 9, 2010, officers from the Glendale Police Department discovered a corpse in the trunk of a car. (Doc. 23 at 1.) Through investigation, the police learned that the victim had operated a marijuana trafficking business with Petitioner and that Petitioner was the last known person to be seen with the victim. (*Id.*) Based on this information, the police obtained a warrant to search Petitioner's home for evidence of drug trafficking. (*Id.* at 1-2.) During the search, the police observed a bullet strike on a floor tile, red drops of

1  liquid on the floor, loaded gun magazines, and a wall that appeared to have been freshly

2  patched and painted. (*Id.* at 2.) The police proceeded to test the drops and confirmed they

3  were, in fact, blood. (*Id.*) Based on all of this information, the police obtained another

4  warrant to expand the scope of the search. (*Id.*)

5  Petitioner was arrested around the time of the search. (*Id.*) During a post-arrest

6  interview, Petitioner admitted that he had shot and killed the victim during a drug-related

7  argument, further admitted that he'd attempted to clean his house with bleach and patch

8  the wall after the murder, and further admitted that he'd disposed of the victim's property

9  and placed the victim in the trunk after the murder. (*Id.*)

10  Before trial, Petitioner's counsel moved to suppress the blood evidence and the

11  evidence found during the second search. (*Id.*) The trial court denied the motion. (*Id.*)

12  At trial, Petitioner testified in his own defense. (*Id.*) The jury could not reach a

13  unanimous verdict on the charge of first-degree murder but convicted Petitioner of the

14  lesser-included offense of second-degree murder, as well as of the charge of abandonment

15  or concealment of a body. (*Id.*) Petitioner was sentenced to consecutive terms of

16  imprisonment totaling 24 years. (*Id.*)

17  Petitioner timely appealed his conviction and sentence to the Arizona Court of

18  Appeals. (*Id.* at 3.) The sole argument raised in this appeal was whether the trial court

19  erred by denying the suppression motion. (*Id.*) In an unpublished decision issued in June

20  2013, the Arizona Court of Appeals affirmed. (*Id.* at 2-3.)

21  In July 2013, Petitioner filed a *pro se* notice of post-conviction relief ("PCR"). (*Id.*

22  at 3.) In response, the trial court appointed counsel, who subsequently informed the court

23  that he could not identify any colorable issues. (*Id.*) Petitioner also filed a *pro se* PCR

24  petition in which he raised the following arguments: (1) the state presented false testimony;

25  (2) the state failed to adequately investigate the case; (3) the state violated *Brady*; (4) the

26  trial court improperly excluded certain evidence; and (5) he received ineffective assistance

27  because his trial counsel (a) failed to obtain and use impeachment evidence, (b) untimely

28  interviewed the state's medical examiner, and (c) failed to investigate or present mitigation

1    evidence at sentencing.  (*Id.*)

2           On December 2014, the trial court dismissed the PCR petition.  (*Id.*)  The court

3    found that many of Petitioner's claims were precluded under Rule 32.2 of the Arizona

4    Rules of Criminal Procedure, because he could have raised them in his direct appeal, and

5    that Petitioner's ineffective assistance claims failed because, regardless of whether

6    counsel's performance was deficient, Petitioner "failed to show any evidence of prejudice"

7    in light of the "overwhelming evidence of [Petitioner's] guilt."  (*Id.* at 3-4.)

8           In February 2017, the Arizona Court of Appeals issued a memorandum decision

9    affirming the trial court's dismissal of the PCR petition.  (*Id.* at 4.)  In that decision, the

10   appellate court expressly adopted the trial court's reasoning and analysis.  (*Id.*)

11          In September 2015, while his appeal in the first PCR proceeding was pending,

12   Petitioner filed a second *pro se* PCR notice.  (*Id.*)  Once again, the trial court appointed

13   counsel, and once again, counsel could not identify any colorable issues.  (*Id.*)  Petitioner

14   then filed a second *pro se* PCR petition, which raised the following seven grounds for

15   relief: "(1) the State committed misconduct by presenting false testimony by witness

16   McKeen; (2) the State in bad faith, failed to collect potentially exculpatory evidence; (3)

17   the State violated the defendant's rights under *Brady* by not raising the fact that witness

18   McKeen had knowledge of the drug transactions that he and the victim were involved in;

19   (4) defense counsel engaged in ineffective assistance of counsel; (5) defense counsel failed

20   to collect or utilize impeachment material to attack witness testimony; (6) defense counsel

21   erred by interviewing the medical examiner immediately before trial; and (7) defense

22   counsel failed to investigate or present sufficient mitigation at sentencing."  (*Id.*)

23          In December 2016, the trial court dismissed the second PCR petition.  (*Id.*)  The

24   court found that all of Petitioner's claims had been raised in his first PCR petition, only to

25   be rejected on the merits, and/or could have been raised in the first PCR petition and were

26   therefore forfeited.  (*Id.*)

27          In November 2017, the Arizona Court of Appeals denied Petitioner's petition for

28   review of the order denying his second PCR petition.  (*Id.*)

II.     The Petition

On November 6, 2017, Petitioner filed his habeas petition. (Doc. 1.) It asserts the following 10 grounds for relief:

(1)     Fourth Amendment violation—issuance of illegal search warrant. (Doc. 1 at 6.)

(2)     Ineffective assistance of counsel—"Failure of Trial Attorney to Investigate Case." (Doc. 1 at 7-8.)

(3)     Ineffective assistance of counsel. (Doc. 1 at 9-11.)

(4)     *Brady* violation. (Doc. 1 at 12.)

(5)     Admission of false testimony. (Doc. 1 at 13-14.)

(6)     Ineffective assistance of counsel—"Trial Attorney Failed to Provide Appellate Attorneys With Complete File." (Doc. 1 at 15.)

(7)     Failure to provide full discovery. (Doc. 1 at 16.)

(8)     Violation of right of self-representation. (Doc. 1 at 17.)

(9)     "Due process violation for failure to allow the defendant to investigate the state's case and to pursue evidence to prove statements in appeals petition." (Doc. 1 at 18.)

(10)    "Due process violation for ignoring all evidence of 2nd post conviction petition to rule it as excessive." (Doc. 1 at 19.)

III.    Summary Of R&R

The R&R concludes the petition should be denied and dismissed with prejudice.

As for Ground One, the R&R concludes it is not cognizable because Fourth Amendment claims cannot provide the basis for habeas relief when (as here) the state provided a full and fair opportunity to litigate the claim. (Doc. 23 at 22.)

As for Grounds Two and Three, the R&R begins by noting that these claims are premised on "a narrative account of incidents and allegations purportedly underlying . . . multiple claims of ineffective assistance of counsel." (*Id.* at 12.) The R&R concludes that Petitioner only presented three specific theories of ineffective assistance in his initial PCR petition, so any additional theories articulated in Grounds Two and Three are procedurally

defaulted. (*Id.* at 12-18.) As for the three non-defaulted theories, the R&R concludes the first one (failing to collect or utilize impeachment material to attack the testimony of a particular witness, McKeen) fails because "Petitioner has not shown deficient performance or prejudice." (*Id.*at 18-19.) Specifically, the R&R notes that the record reveals that Petitioner's trial counsel *did* attempt to impeach and cross-examine McKeen "to the extent the judge allowed such questioning" and that a trial attorney's impeachment strategy is, in general, a tactical decision that is afforded great deference. *Id.*) As for Petitioner's second non-defaulted theory of ineffective assistance (failing to timely interview the medical examiner), the R&R concludes that Petitioner failed to show deficient performance or prejudice because (1) the evidence shows that counsel actually conducted the interview a week before trial and (2) Petitioner has not demonstrated how an earlier interview would have resulted in more favorable evidence. (*Id.* at 20-21.) Finally, as for Petitioner's third non-defaulted theory of ineffective assistance (failing to "submit the results of the Rappleyea Investigations Report to the court"), the R&R concludes that Petitioner failed to show deficient performance or prejudice because the record reflects that Petitioner's counsel did submit the report as an attachment to his sentencing memorandum and then made arguments based upon the report during the sentencing hearing. (*Id.* at 21-22.)

As for Grounds Four and Five, the R&R concludes these claims are "procedurally barred" because (1) Petitioner could have raised them in his direct appeal but failed to do so, (2) the Arizona courts concluded, during the PCR proceedings, that these claims were therefore "precluded pursuant to Arizona Rule of Criminal Procedure 32.2(a)," and (3) the Arizona courts' invocation of Rule 32.2(a) constitutes "an adequate and independent state ground" for denying relief. (Doc. 23 at 11-12.)

As for Ground Six, the R&R concludes this claim is procedurally defaulted because Petitioner failed to raise it during either of his PCR proceedings. (*Id.* at 12.)

As for Ground Seven, the R&R concludes (just as it concluded with respect to Grounds Four and Five) that this claim is "procedurally barred" because (1) Petitioner could have raised it in his direct appeal but failed to do so, (2) the Arizona courts concluded,

1 during the PCR proceedings, that this claim was therefore "precluded pursuant to Arizona

2 Rule of Criminal Procedure 32.2(a)," and (3) the Arizona courts' invocation of Rule 32.2(a)

3 constitutes "an adequate and independent state ground" for denying relief. (Doc. 23 at 11-

4 12.)

5 As for Grounds Eight and Nine, the R&R concludes these claims (like Ground Six)

6 are procedurally defaulted because Petitioner failed to raise them during either of his PCR

7 proceedings. (*Id.* at 12.)

8 Finally, as for Ground Ten, the R&R concludes it lacks merit because it does "not

9 allege violations of federal constitutional law" and instead challenges Arizona's PCR

10 procedures. (*Id.* at 22-23.) (The R&R also concludes that Ground Nine additionally fails

11 for this reason.)

12 IV. Legal Standard

13 A party may file specific, written objections to an R&R within fourteen days of

14 being served with a copy of it. Rules Governing Section 2254 Cases 8(b) ("Section 2254

15 Rules"); *see also* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). The Court must

16 undertake a *de novo* review of those portions of the R&R to which specific objections are

17 made. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does not appear that

18 Congress intended to require district court review of a magistrate's factual or legal

19 conclusions, under a *de novo* or any other standard, when neither party objects to those

20 findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he

21 district judge must review the magistrate judge's findings and recommendations de novo

22 if objection is made, but not otherwise."). The Court may accept, reject, or modify, in

23 whole or in part, the findings or recommendations made by the magistrate judge. Section

24 2254 Rules 8(b); *see also* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).

25 V. Analysis

26 A. **Parties' Arguments**

27 Petitioner filed a two-page document entitled "Objection." (Doc. 24.) First,

28

Petitioner objects to the R&R's rejection of Ground Six,[1] arguing that the R&R's finding of procedural default is inaccurate because he raised this claim in his second PCR petition. (*Id.*) Second, with respect his third non-defaulted theory of ineffective assistance (trial counsel's purported failure to "submit the results of the Rappleyea Investigations Report"), Petitioner faults the R&R for "overlooking [his] dyslexia," argues that the jury was never able to see the report, and contends the report would have impeached two of the witnesses who testified against him because it shows they "had a vested interest in [Petitioner] going to prison." (*Id.*) Third, in the final sentence of his objections, Petitioner asserts that "[a]ll of these mistakes along with the other 9 grounds would demonstrate a miscarriage of justice." (*Id.* at 2.)

In their response, Respondents argue that Petitioner's first objection is unavailing because "the R&R did not err by finding that [Petitioner] procedurally defaulted Ground 6." (Doc. 26 at 2-3.) Specifically, Respondents state that Petitioner didn't fairly present Ground Six in his second PCR petition because (1) he didn't identify it as a discrete ground for relief, (2) didn't offer any argument in support of it, (3) merely made a passing reference to it in the "conclusion" section of the petition, and (4) characterized it as a claim of ineffective assistance of *appellate* counsel (whereas, here, he seeks to characterize it as a claim of ineffective assistance of *trial* counsel). (*Id.*) Respondents further note that, even if Petitioner had fairly presented this claim in his second PCR petition, it would still be considered procedurally defaulted because he could have raised it in his first PCR petition. (*Id.*) As for Petitioner's second objection, Respondents argue that the theory Petitioner now wishes to pursue (*i.e.,* trial counsel failed to present the report to the jury) is different from the theory he articulated in his habeas petition, which is that trial counsel failed to present the report to the state-court judge or request a new trial based upon it. (*Id.* at 3-4.) Respondents also argue that the report didn't, in any event, identify any facts that might warrant a new trial. (*Id.* at 4.) As for Petitioner's third objection (miscarriage of justice), Respondents argue that (1) "this is a new argument because [Petitioner] did not allege a

---

[1]     Although Petitioner refers to "Ground 9" in his objection (Doc. 24 at 1), he clarifies in his reply that he was actually referring to Ground Six (Doc. 27 at 1).

fundamental miscarriage of justice in his habeas petition" and (2) on the merits, there can be no such miscarriage here because Petitioner "does not allege or prove actual innocence." (*Id.* at 4-5.)

In his reply, Petitioner argues that he did fairly raise Ground Six in his second PCR petition and that he couldn't have raised this claim in his first PCR petition because he "only discovered" the basis for it in March 2016. (Doc. 27 at 1-2.)

**B.    Discussion**

Petitioner's objections will be overruled. As an initial matter, because Petitioner didn't raise any objections to the R&R's rejection of Grounds One, Four, Five, Seven, Eight, Nine, and Ten of the petition, the Court will adopt the R&R's rejection of those claims without further discussion. *Thomas,* 474 U.S. at 149-50; *Reyna-Tapia*, 328 F.3d at 1121.

As for Grounds Two and Three, the R&R provided an array of reasons why these claims should be rejected. Petitioner objects to only one small component of this analysis—the R&R's rejection of one of his non-defaulted theories of ineffective assistance (counsel's alleged failure to submit the results of the Rappleyea Investigations Report). Thus, the Court will adopt, without further discussion, the unobjected-to portions of the R&R addressing Grounds Two and Three. *Thomas,* 474 U.S. at 149-50; *Reyna-Tapia*, 328 F.3d at 1121.

The Court also agrees with the R&R's rationale for rejecting the ineffective assistance claim in Grounds Two and Three premised on counsel's purported failure to utilize the report. First, Petitioner hasn't demonstrated that counsel's performance was deficient. Although Petitioner faults his counsel for not presenting the report to the jury, the trial ended on September 20, 2011 (Doc. 12-1 at 20) and the report wasn't issued by the investigative agency until November 19, 2011 (Doc. 12-3 at 58). Counsel couldn't have utilized, during trial, a report that didn't even exist yet. Second, Petitioner also cannot demonstrate prejudice. As noted, Petitioner confessed the police after they found drops of blood, loaded gun magazines, and a freshly-patched wall in his home. *See generally* Doc.

1   23 at 3-4 (R&R, noting that the state courts rejected Petitioner's ineffective-assistance

2   claims because "the "overwhelming evidence of [Petitioner's] guilt" made it impossible to

3   demonstrate prejudice).

4        As for Ground Six, the Court agrees with the R&R that Petitioner procedurally

5   defaulted this claim by failing to fairly present it during the state-court proceedings.

6   Petitioner's second PCR petition appears at Doc. 12-6, pages 14-34. In the section of this

7   petition entitled "Denial of Trial Counsel," Petitioner identified a laundry list of reasons

8   why he was dissatisfied with his trial counsel's performance. (Doc. 12-6 at 18-23.) That

9   section of the petition doesn't say anything about trial counsel's alleged failure to provide

10  records to appellate counsel. (*Id.*) It is only in a different section of the brief, entitled

11  "Conclusion," that Petitioner made a passing claim that his trial counsel did "not disclos[e]

12  his full file to the Defendant and other Attorney's" and thus "affect[ed] the post-conviction

13  proceedings." (Doc. 12-6 at 30.) This is not fair presentation. Moreover, even if this claim

14  weren't procedurally defaulted, it fails to provide a valid foundation for an ineffective-

15  assistance claim because, as noted above, the overwhelming evidence of Petitioner's guilt

16  makes it impossible to demonstrate prejudice.

17       Finally, as for Petitioner's attempt to raise a "fundamental miscarriage of justice"

18  claim in his objections, the R&R correctly rejected the possibility of such a claim (Doc. 23

19  at 14-15) because, *inter alia*, Petitioner hasn't proved actual innocence.

20       Accordingly, **IT IS ORDERED** that:

21      (1)    The R&R's recommended disposition (Doc. 23) is **accepted**;

22      (2)    Petitioner's objections (Doc. 24) are **overruled**;

23      (3)    The petition (Doc. 1) is **denied and dismissed with prejudice**;

24      (4)    A Certificate of Appealability and leave to proceed in forma pauperis on

25  appeal are **denied** because Petitioner has not made a substantial showing of the denial of a

26  constitutional right and because the dismissal of the petition is justified by a plain

27  procedural bar and jurists of reason would not find the procedural ruling debatable; and

28      …

1    (5)    The Clerk shall enter judgment accordingly and terminate this action.

2    Dated this 4th day of October, 2019.

_____
Dominic W. Lanza
United States District Judge